## S99A1447. RAMSEY v. THE STATE.
(526 SE2d 842)

BENHAM, Chief Justice.

Appellant James Ramsey was convicted of the 1995 murder of his wife, Mauricette Jacqueline Ramsey.[1] On December 3, 1995, appellant shot and killed his wife at the apartment complex where he lived with the victim and their son. Appellant had just returned from a nightclub, where he had been drinking. Upon his arrival, appellant got into an argument with the victim. During the argument, the victim informed appellant that she had been unfaithful and that he might not be the father of their son. Appellant then went into his son's room to obtain his gun. Soon thereafter, appellant shot the victim.

Officer Gravitt, the first police officer on the scene, testified that upon arriving at appellant's residence, he was directed to a bedroom where the victim lay. Afterward, while the officer waited in the living room with appellant, he told the officer that he had come home at about 4:30 a.m. and that the victim had confronted him about where he had been that night. Appellant stated that he then went into his son's bedroom to obtain his gun in order to clean it. According to appellant, as he dropped the clip out of the gun, the gun fired and hit the victim in the head. After being read his *Miranda* rights, appellant gave a similar statement at an interview at the police station.

During the investigation of the crime scene, the police discovered a bullet hole in the wall of appellant's apartment, indicating that he had fired at the victim more than once. Jewelry belonging to the victim and their son was taken from appellant. The victim's mother testified at trial that the victim never took off a necklace that was found in appellant's possession. The prosecution used this evidence to show that appellant took the necklace off of the victim after she was shot, undermining appellant's theory of voluntary manslaughter.

At trial, appellant testified that at the time he shot his wife, he was very angry at the victim for taunting him. He also testified that he intended to kill her. Appellant claimed he attempted to cover up the crime because he was afraid of going to prison and that he had

---

[1] The crime occurred on December 3, 1995. Appellant was arrested on the same date and indicted by a Fulton County grand jury on May 24, 1996 on charges of murder, felony murder, aggravated assault and possession of a firearm by a convicted felon (violation of OCGA § 16-11-131). He entered a plea of not guilty and was tried by a jury on March 17, 1997. The jury returned a guilty verdict on March 19, 1997. The trial court sentenced appellant to life imprisonment for the murder conviction and a five-year consecutive sentence for the weapons charge on the same date. Appellant filed a motion for new trial on March 31, 1997, and amended by newly appointed appellate counsel on April 15, 1998. The motion for new trial was denied on June 16, 1998, and a timely notice of appeal was filed on June 23, 1998. The case was docketed in this court on June 29, 1999. It was submitted for decision on briefs.

lied to police when he told them the shooting was an accident.

1. Appellant contends the verdict is contrary to law and the principles of justice and equity because the evidence was only sufficient to support a voluntary manslaughter verdict. We disagree. While there was evidence supporting a voluntary manslaughter verdict, there was also sufficient evidence that would allow a rational trier of fact to return a guilty verdict on malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Thus, we find the jury was authorized to convict appellant of malice murder.

2. In his second enumeration of error, appellant contends it was error for the trial court to deny his motion to suppress the initial statements made by appellant to Officer Gravitt before he was given *Miranda* warnings.[2] In order for appellant to show error in the admission of these statements, appellant must demonstrate that he was both in custody and was interrogated at the time the statements were made. *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966); *Selman v. State*, 267 Ga. 198 (2) (475 SE2d 892) (1996).

We need not consider whether appellant was in custody because the undisputed evidence presented at the motion to suppress hearing demands the conclusion that he was not interrogated with respect to the statement at issue. *Lolley v. State*, 259 Ga. 605 (2) (385 SE2d 285) (1989). The evidence presented shows that appellant spontaneously began to speak to Officer Gravitt without any prompting. Thus, appellant's second enumeration of error is without merit.

3. In his third enumeration of error, appellant contends his counsel was ineffective in several respects: that he coerced appellant into pursuing a voluntary manslaughter theory after appellant had already told officers the killing was an accident; that he told the jury that appellant intended to kill the victim; that he failed to investigate evidence which showed appellant possessed his wife's necklace when he was at the nightclub before she was killed; and that he failed to subpoena character witnesses and a witness who could testify that appellant was in a good mood immediately before he entered his apartment.

In order to show his counsel was ineffective, appellant must demonstrate that trial counsel made errors that prejudiced his defense. *Brady v. State*, 270 Ga. 574 (513 SE2d 199) (1999); *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

---

[2] Appellant also challenges the statement he gave at the police station after he had been properly *Mirandized*. Appellant admits that the statement was properly admitted, but wishes that this court consider "the danger inherent in accepting, without any other evidence," a police officer's testimony regarding the propriety of a defendant's interrogation. As appellant admits the trial court committed no error, we do not address appellant's argument regarding this issue.

There is a strong presumption that counsel's conduct at trial falls within a "wide range of professional conduct and that all significant decisions were made in the exercise of reasonable professional judgment." *Smith v. Francis*, 253 Ga. 782 (1) (325 SE2d 362) (1985). Counsel's conduct should not be analyzed in hindsight. *Turpin v. Bennett*, 270 Ga. 584 (2) (513 SE2d 478) (1999).

Defendant testified at the motion for new trial hearing that he was coerced into pursuing a voluntary manslaughter theory. However, trial counsel denied coercing appellant into pursuing voluntary manslaughter as an alternate theory of his actions on the night of the crime and asserted that appellant willingly pursued the approach after trial counsel explained to appellant that his version of the facts was inconsistent with the evidence and would likely fail. We must accept the trial court's findings regarding the credibility of witnesses and disputed facts.[3] *Espinoza v. State*, 265 Ga. 171 (1) (454 SE2d 765) (1995). That being so, trial counsel's attempts to persuade the jury that appellant killed his wife out of passion could be considered a matter of reasonable trial strategy. *Turpin v. Mobley*, 269 Ga. 635 (3) (502 SE2d 458) (1998). Similarly, trial counsel's statements during closing argument that appellant intended to kill the victim were a part of a reasonable trial strategy since intent to kill is an element of voluntary manslaughter.

Further, appellant contends that trial counsel should have investigated evidence that showed that appellant had his wife's necklace before she was killed. We believe the evidence supports the conclusion that trial counsel's conduct in this regard was reasonable. See *Harris v. State*, 268 Ga. 412 (490 SE2d 96) (1997). Evidence that appellant possessed the necklace would have added little to his defense. Likewise, trial counsel's failure to subpoena character witnesses could be considered reasonable conduct. See id. The advantage gained by calling character witnesses would have been slight in light of the evidence against appellant and the fact that appellant would have lost the right to close.

Thus, we find that the trial court's ruling was not erroneous. The record reflects that trial counsel adequately investigated the matter prior to making key decisions and that his conduct at trial fell within the bounds of reasonable representation.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 31, 2000.

*Elaine T. McGruder*, for appellant.

---

[3] The trial court denied the motion without making specific findings of fact or law. We assume that the trial court accepted trial counsel's testimony over appellant's testimony.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, David E. Langford, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.*