# A02A1039. SMITH v. THE STATE.
### (570 SE2d 400)

MIKELL, Judge.

A jury found Mark Anthony Smith guilty of one count of aggravated child molestation, three counts of child molestation, and one count of first degree cruelty to children based on acts committed against a nine-year-old boy. Smith was acquitted of three similar charges relating to a five-year-old girl. He appeals from the denial of his motion for new trial, contending that the trial court erred in (1) refusing to grant him funds to hire an investigator to locate a witness, (2) denying his motion in limine to exclude evidence of his sexual relations with the children's mother, (3) admitting videotaped statements that had not been produced before trial, (4) failing to find that his trial counsel was ineffective, and (5) permitting two witnesses to bolster the credibility of the male victim. Finding no error warranting reversal, we affirm.

1. Smith first argues that the trial court erred in refusing to grant him funds to hire an investigator to locate a necessary witness, Barbara Moore, the mother of the two alleged victims. Trial counsel testified at the hearing on Smith's motion for new trial that the court denied his in-camera motion to hire an investigator to find her. However, the record does not support counsel's testimony. On October 27, 2000, approximately two weeks before trial, the court issued an order granting the defense leave to proceed ex parte, in camera, and on a sealed record with regard to any requests for funds for expert and investigative assistance. The record contains no additional motions filed by the defendant to obtain funds to hire an investigator. Nor did trial counsel raise the issue of the necessity of funds when he requested a continuance at the calendar call six days before trial or during trial itself. In fact, according to the prosecutor, the state sought Moore as a witness, had issued warrants for arrest, and had been searching for her for three weeks prior to trial.

Finally, Smith has failed to demonstrate that Moore's testimony was essential to his defense. Although Moore was located to testify at the hearing on the motion for new trial,[1] her testimony seemed largely incoherent. She told the court that she had been on two or three prescription medications for thirteen years and suffered significant memory loss. "The grant or denial of a motion for funds to

---

[1] The record reflects that on October 26, 2001, the trial court ordered the county to reimburse $105 to an investigator for the defendant. Although the state argues that the order demonstrates that the trial court granted a *pretrial* request for investigative assistance, the order is dated one day after the hearing on the motion for new trial, and appellate counsel claims in a reply brief that she hired the investigator to locate Moore to testify at the hearing. We thus decline the state's invitation to consider the October 26 order as evidence that a pretrial request for funds was granted.

employ an investigator lies within the sound discretion of the trial judge and his findings will not be overturned on appeal in the absence of a showing of an abuse of discretion. We have found no abuse of discretion."[2]

2. Smith next asserts that the trial court erred in denying his motion in limine to exclude evidence that a teacher observed Smith and Moore engaged in sexual relations in their home. We agree but conclude that the error was harmless beyond a reasonable doubt.

The record shows that Smith was living with Moore and the children when the incidents for which he was indicted occurred. The male victim's teacher, Anna Moates, testified that the child was a disciplinary problem. According to Moates, one day he behaved so violently toward her that she and the assistant principal decided to take him home. Upon arriving at the home, Moates knocked on the door, but no one answered, so the child opened the door and went in. Moates testified that she looked into the room and saw Smith and Moore naked, having sex. She also stated that the child simply walked around them.

Smith sought to exclude this testimony on the grounds that it was irrelevant, prejudicial, and improperly placed his character in issue. The state argued that the testimony was relevant to show that there were "absolutely no boundaries in this household." The trial court acknowledged that the evidence was "somewhat prejudicial" but nevertheless ruled it admissible.

"Generally, unless a defendant opens the door with evidence of his good character, bad character evidence is inadmissible."[3] Testimony that Smith and Moore were having sex while the children were absent from the home was neither relevant nor admissible for any proper purpose; rather, in our view, it was intended to show Smith's bad character.[4] Moreover, Smith had not placed his character in issue prior to this testimony. Accordingly, the trial court erred in denying the motion in limine as well as Smith's objection to the testimony at the time it was offered. However, we find the error harmless in light of the overwhelming evidence that Smith committed the crimes at issue against this child.[5]

The little boy testified that Smith put his penis in the child's bot-

---

[2] (Citation and punctuation omitted.) *Thompkins v. State*, 181 Ga. App. 158 (1) (351 SE2d 475) (1986).

[3] *Woods v. State*, 235 Ga. App. 894, 896 (510 SE2d 848) (1999); OCGA § 24-9-20 (b).

[4] *Duke v. State*, 256 Ga. 671, 672-673 (1) (352 SE2d 561) (1987), overruled on other grounds, *Renner v. State*, 260 Ga. 515, 518 (3) (b) (397 SE2d 683) (1990). See also *Simpson v. State*, 271 Ga. 772, 774 (1) (523 SE2d 320) (1999) (in prosecution for sexual offenses, sexually explicit material inadmissible merely to show defendant's interest in sexual activity).

[5] *Howard v. State*, 233 Ga. App. 724, 729 (5) (505 SE2d 768) (1998); *Parker v. State*, 226 Ga. App. 462, 464 (5) (486 SE2d 687) (1997).

tom, touched the child's penis, and made the child touch Smith's penis. A paraprofessional at the child's school testified that she was unable to get him to sit down. When she asked him about it, the child responded that his bottom hurt because "Mark had messed with him." The paraprofessional took the child directly to Moates, who asked him whether anyone else had touched him this way. The child said no, only Smith. A pediatrician who examined the child testified that his anal sphincter was abnormally stretched out and that he had bowel problems, conditions consistent with sexual abuse. Finally, a social worker and a therapist testified that the child described the abuse to them. Given the overwhelming evidence of his guilt, Smith is not entitled to a new trial based on the erroneous admission of bad character evidence.

3. Smith contends the trial court erred in denying his request for continuance based upon the state's alleged discovery violations. We disagree.

At the call of the calendar, Smith, who had demanded a speedy trial, stated that he intended to withdraw his demand and asked for a continuance. Smith complained that he had not been provided with videotapes or transcripts of the victims' statements. The prosecutor objected to continuing the case because of the strain on the children and the difficulty of locating them. The prosecutor stated that the children had been moved repeatedly since being placed into foster care. She also claimed that the videotapes were in the state's file and defense counsel had not sought to review them, a claim which counsel vigorously disputed.

A trial court's ruling on a motion for continuance is within the sound discretion of the trial court and will not be disturbed absent a showing of abuse of that discretion.[6] In the instant case, we conclude the trial court did not abuse its discretion by refusing to grant a continuance. The calendar call was held six days before trial, giving counsel ample time to review the state's file. Moreover, counsel has not demonstrated how he would have benefitted by additional preparation time.[7] Finally, contrary to Smith's argument, the state was not required to serve him with transcripts of the videotapes. OCGA §§ 17-16-4 (a) (3) and 17-16-7 "require[ ] only that the State make [such evidence] available for inspection, copying, or photographing, not that such [transcripts] be served upon the defendant."[8]

In any event, Smith cannot show harm resulting from his alleged inability to review the videotapes before trial. When the state

---

[6] *Gentry v. State*, 255 Ga. App. 255, 256 (2) (564 SE2d 845) (2002). See OCGA § 17-8-22.
[7] Id.
[8] *Lawson v. State*, 224 Ga. App. 645, 647-648 (3) (481 SE2d 856) (1997) (interpreting OCGA § 17-16-4 (a) (1)).

sought to introduce the videotapes into evidence, the trial court ruled that trial counsel would be permitted to review them overnight and to recall the alleged victims for cross-examination. By permitting the inspection of the videotapes, the trial court complied with OCGA § 17-16-6. Moreover, after reviewing the tapes, trial counsel chose to recall only the little girl. Cross-examination of that witness proved successful, as Smith was acquitted of the charges relating to her. It is well settled that harm as well as error must be shown to warrant reversal.[9] Smith is not entitled to a new trial based on any alleged discovery violation.

4. Smith next alleges that his trial counsel was ineffective in two respects: failing to use due diligence to locate Moore to testify for the defense, and failing to object to a social worker's testimony concerning the male victim's veracity. In addition, Smith contends that the admission of the social worker's allegedly objectionable testimony requires reversal of his conviction under the plain error rule. We reject each of these contentions.

In order to prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that the deficient performance was prejudicial, i.e., that there was a reasonable probability that the outcome of the trial would have been different but for counsel's deficiencies.[10] The trial court's ruling that trial counsel was not ineffective will be affirmed unless clearly erroneous.[11]

(a) Trial counsel testified that he subpoenaed Moore's records from the Department of Family & Children Services and contacted some of her family members as well as her current boyfriend. The boyfriend indicated that Moore would evade any subpoena. According to trial counsel, he and Smith's father then spent an entire day searching for Moore, going to several locations that she was believed to frequent. The lengths to which Moore went to evade process are evidenced by the fact that the state was unable to locate her despite three weeks of searching. We hold that trial counsel's failure to locate her cannot be deemed ineffective assistance.[12]

(b) Smith's second claim of ineffectiveness relates to the testimony of Lisa Ellis, a licensed clinical social worker. Ellis interviewed the male victim and testified at length concerning her assessment of him. She testified that he exhibited sexually predatory behavior toward other children, which was consistent with a child who had been sexually abused. Ellis then recounted in detail the sexual acts

---

[9] *Evans v. State*, 233 Ga. App. 879, 880 (2) (506 SE2d 169) (1998).

[10] *Abney v. State*, 240 Ga. App. 280, 282-283 (3) (523 SE2d 362) (1999).

[11] Id. at 283.

[12] Id.

the child told her he had committed against numerous other children. In addition, Ellis testified, the child relayed how Smith "touched me with his hand and with his private part here," pointing to his buttocks area, as well as "put his mouth on my private parts."

The prosecutor then asked the witness the following question: "And in your talking with [the child], did you ever feel like he had made this story up just to get more control?" Ellis responded that she did not because

> his affect was congruent with what he was saying. He'd become very upset and very emotional. He remained consistent and he looked like a child — like a nine-year-old functioning at his level, in my experience, should look like. I mean, he looked very genuine.

Smith claims this testimony was objectionable as either expressing an opinion on the ultimate issue in the case or bolstering the victim's credibility. "Normally, a party may not bolster the veracity of its own witness until the witness has been impeached by the adverse party."[13] However, the state is permitted to rehabilitate a witness whose credibility has been attacked.[14] That is what occurred in the case at bar. Trial counsel testified that the main defense strategy was to attack this victim's truthfulness, a strategy counsel employed throughout the trial. Accordingly, the testimony complained of was admissible to rehabilitate the victim's credibility, and trial counsel was not deficient in failing to object to it.

5. Finally, Smith asserts that the trial court erred in allowing a therapist, Sandra Gardner, to testify over objection that in her opinion, the male child was not sophisticated enough to fabricate "a story about someone just to get that person in trouble." Again, Smith claims that the admission of this testimony was reversible error because it impermissibly bolstered the victim's credibility. For the reasons stated in Division 4 (b), we disagree. As Smith's trial strategy was to attack the victim's veracity, and he had repeatedly done so, Gardner's testimony was properly admitted to rehabilitate the child's credibility.[15]

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

---

[13] *State v. Braddy*, 254 Ga. 366, 367 (330 SE2d 338) (1985), citing *Hamilton v. Conyers*, 28 Ga. 276 (1859).

[14] *Nance v. State*, 272 Ga. 217, 222 (5) (526 SE2d 560) (2000); *Reed v. State*, 248 Ga. App. 107, 110 (2) (545 SE2d 655) (2001).

[15] Id.

Decided August 20, 2002 — 

Kathleen J. Anderson, for appellant.
Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney, for appellee.