## A06A0654. HARRIS v. THE STATE.
### (631 SE2d 772)

MIKELL, Judge.

Timothy Donald Harris was convicted of two counts of child molestation (Counts 1 and 2) and one count of aggravated sexual battery (Count 3). He was sentenced to serve twenty years on Counts 1 and 3, to run concurrently, and ten years probation on Count 2, to run consecutively to the remaining sentence. On appeal from the denial of his amended motions for new trial, Harris argues that (1) the trial court abused its discretion in permitting a physician to testify, over objection, that his findings were consistent with molestation; (2) the state failed to prove venue beyond a reasonable doubt as to Count 3; and (3) trial counsel rendered ineffective assistance. We find no merit in these contentions and affirm Harris' convictions.

1. Harris first contends that the trial court abused its discretion in permitting an expert witness, the pediatrician who examined the victim in the emergency department at Scottish Rite Children's Medical Center, to testify, over objection, that his findings were consistent with molestation. Prior to trial, the defense filed a motion in limine to preclude the pediatrician from testifying that the child

---

was a "probable victim of child molestation," asserting that such testimony would be a prohibited expression of opinion on the ultimate issue in the case.[1] The trial court ruled that the expert witness would be permitted to state that his findings were consistent with a finding of molestation. During direct examination of the witness, the prosecutor asked him the following question: "Q. Is the genital exam that you conducted in your findings, is that consistent with the story that [the victim] was telling you about or told the social worker about the molestation?" Defense counsel objected, reasserting the objection raised in the motion in limine. The trial court ruled that the pediatrician could testify as to whether "he found it consistent." The prosecutor then asked the pediatrician, "was it consistent with the molestation that was being alleged by [the victim]?" The pediatrician answered, "Yes."

Harris contends that the pediatrician's testimony improperly invaded the province of the jury and bolstered the victim's credibility. We recently reiterated the Georgia rule on this issue in *Patterson v. State*:[2]

> [I]n no circumstance may a witness' credibility be bolstered by the opinion of another, even an expert, as to whether the witness is telling the truth. An expert witness may not testify as to his opinion of an ultimate issue of fact unless the inference to be drawn from the evidence is beyond the ken of the jurors. Credibility of a witness is not beyond the ken of the jurors but, to the contrary, is a matter solely within the province of the jury. An expert witness may not testify as to his opinion of the victim's truthfulness. An expert witness may testify generally about the ability of children of a certain age to distinguish truth from falsity. *The witness may also express an opinion as to whether medical or other objective evidence in the case is consistent with the victim's story.* However, an expert witness may not put his or her stamp of believability on the victim's story.[3]

In *Patterson*, we reversed the defendant's conviction of child molestation and aggravated battery, holding that the trial court erred by allowing the state's expert witness to testify over objection that she

---

[1] See generally *Gosnell v. State*, 247 Ga. App. 508, 509 (2) (544 SE2d 477) (2001).
[2] 278 Ga. App. 168 (628 SE2d 618) (2006).
[3] (Citations omitted; emphasis supplied.) Id. at 170.

did not believe that the victim fabricated the allegations against the defendant. We concluded that the testimony improperly bolstered the victim's credibility.[4]

The objectionable testimony in *Patterson* stands in stark contrast to the expert testimony in the case at bar. In this case, the pediatrician's testimony that his medical findings were consistent with the victim's allegation of molestation is permitted by the rule stated in *Patterson* that the expert "may also express an opinion as to whether medical or other objective evidence in the case is consistent with the victim's story."[5] Here, the pediatrician's testimony is akin to that of the treating psychologist in *Williams v. State*,[6] who testified that the results of her testing were consistent with the victim's statements that she had been sexually abused.[7] "The testimony of experts that certain medical or scientific tests resulted in findings consistent with molestation does not violate OCGA § 24-9-80; it is admissible and proper."[8] Here, too, the pediatrician's testimony that his medical findings were consistent with the victim's allegation of molestation was admissible and proper. It follows that the trial court did not err in overruling the defense's objection to the testimony.

2. Harris next contends that the state failed to prove venue beyond a reasonable doubt as to the charge of aggravated sexual battery. We disagree.

Generally, a criminal case must be tried in the county in which the crime was committed.[9] "Venue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged."[10] Like every other material allegation in the indictment, it must be proved beyond a reasonable doubt.[11] The state may establish venue by direct or circumstantial evidence.[12] As an appellate court, we apply the same standard of review to determine whether venue has been laid as we do to any other essential element of the offense. In other words, "we view the evidence in a light most favorable to support the verdict [to] determine whether the evidence was sufficient to permit

---

[4] Id.

[5] Id. See also *State v. Oliver*, 188 Ga. App. 47, 51 (2) (372 SE2d 256) (1988).

[6] 266 Ga. App. 578 (597 SE2d 621) (2004).

[7] Id. at 581 (2).

[8] (Citations omitted.) Id. See also *Atkins v. State*, 243 Ga. App. 489, 495 (2) (533 SE2d 152) (2000).

[9] Ga. Const. 1983, Art. VI, Sec. II, Par. VI; OCGA § 17-2-2 (a).

[10] (Footnote omitted.) *Jones v. State*, 272 Ga. 900, 901 (2) (537 SE2d 80) (2000).

[11] Id.

[12] Id. at 902-903 (2).

a rational trier of fact to find beyond a reasonable doubt that the crime was committed in the county where the defendant was indicted."[13]

In the case at bar, Harris was convicted of aggravated sexual battery based on evidence that he inserted his finger into the vagina of his seven-year-old stepdaughter. The child's testimony as to the manner in which this offense was committed was introduced in the form of a videotape that was played for the jury. On the videotape, which has been included in the record on appeal, the child told a detective that one morning, Harris drove her to the bus stop in his truck. They were alone, and according to the child, "we were a little bit early so we rode around." During this time, the child testified, Harris told her to pull down her underwear and tights and to open her legs. He inserted his finger into the child's vagina and then licked his finger. The child further stated that all incidents in which he touched her inappropriately occurred either at her house or while she was riding around in Harris' truck. It was established through the testimony of the victim's mother that she and Harris lived together in a home in Cobb County before and after their marriage in 2002, that he moved out in November 2002, and that the child lived with her mother, although Harris was permitted to visit her in her home in Cobb County.

In Georgia, "where a crime is committed upon a vehicle traveling within this state and it cannot readily be determined in which county the crime was committed, the crime shall be considered as having been committed in any county in which the crime could have been committed through which the vehicle traveled."[14] In this case, the direct and circumstantial evidence, viewed in the light most favorable to support the verdict, shows that Harris committed aggravated sexual battery upon the child while traveling from her home in Cobb County to a bus stop. Therefore, the evidence established that the vehicle in which the crime occurred traveled through Cobb County. The state proved venue beyond a reasonable doubt, and Harris' contention to the contrary is meritless.[15]

3. Finally, Harris contends that his trial counsel rendered ineffective assistance by failing to object to the state's allegedly improper cross-examination. We disagree.

Harris testified on direct that he was the youngest of ten children and that he has approximately thirty nieces, great nieces, and great nephews, all of whom live in the metro Atlanta area. Harris testified

---

[13] (Citations omitted.) *Chapman v. State*, 275 Ga. 314, 317 (4) (565 SE2d 442) (2002).

[14] (Footnote omitted.) *Gearin v. State*, 255 Ga. App. 329, 334 (3) (565 SE2d 540) (2002). See OCGA § 17-2-2 (e).

[15] See *Gearin*, supra.

that he had been around children all of his life, that he loved children, and that he had never harmed the victim. According to Harris, "I can't hurt a child at all. It ain't me."

On redirect, defense counsel asked Harris to explain a letter that the prosecution had introduced into evidence during the state's case. In the letter, which Harris wrote to the victim's mother a few months after the victim's outcry, Harris asked her and the Lord to "forget [sic] me of all the wrong doing." Harris professes his continuing love for the victim's mother and wishes her a happy Mother's Day. Harris testified that in the letter, he only meant to apologize for screaming at her and cursing her. Harris further testified that he received a response from the victim's mother, in which she called him a child molester and a "sick mother fucker." Defense counsel questioned him about the response, which was introduced into evidence, as follows:

Q. Number one, are you a child molester?
A. No, I'm not.
Q. Are you a sick mother fucker?
A. No, I am not.
Q. Have you ever harmed, touched a child?
A. No, I haven't.

Immediately thereafter, the prosecutor asked Harris the following questions:

Q. You say you're not a child molester?
A. No, I'm not.
Q. You say you've never harmed a child?
A. No, I have not.
Q. Have you ever exposed yourself to a minor?
A. No, I haven't.
Q. You ever had any problems or allegations against you with any of your nieces?
A. No, I haven't.

Harris contends that trial counsel should have objected to the prosecutor's questions regarding whether he had exposed himself to a minor and whether his nieces had made allegations against him. Harris argues that the questions were improper impeachment because they pertained to unproved crimes, and that they were inflammatory, prejudicial, and suggested facts not in evidence. Harris argues that, because there was evidence that he had exposed himself to the victim, any suggestion of improper sexual contact with a minor was extremely prejudicial.

"To prevail on a claim of ineffective assistance of counsel, a defendant must show two things: (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced the defense."[16] We will not disturb the findings of the trial judge, who presided over the trial and heard the evidence presented at the hearing on the motion for new trial, unless they are clearly erroneous.[17] Furthermore, "[w]e will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result."[18]

At the hearing on Harris' motion for new trial, trial counsel testified that he decided to place Harris' character in issue after discussing the matter with him. Knowing that the state had no evidence of prior crimes to introduce, defense counsel testified that his trial strategy was to show that the type of acts for which Harris stood accused were "totally out of character." Counsel further testified that he did not object to the two questions at issue because he believed he had opened the door to that line of questioning and because he knew that the state possessed no evidence that could be introduced to harm Harris.

On the basis of this testimony, we find no clear error in the denial of Harris' motion for new trial. First, the prosecutor's question about whether Harris had exposed himself to a minor was proper because it formed part of the basis of one of the child molestation charges in the indictment, and Harris had already testified that he had never harmed a child. On the other hand, trial counsel could have objected to the question about whether Harris' nieces had ever made any allegations against him, because "[s]pecific instances of misconduct may not be used to impeach a witness's character or credibility, unless the misconduct has resulted in conviction of such a crime."[19] But we have repeatedly held that "[d]ecisions as to whether to interpose certain objections fall within the realm of trial tactics and strategy and usually provide no basis for reversal of a conviction."[20] "Additionally, trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel

---

[16] (Footnote omitted.) *Daguilar v. State*, 275 Ga. App. 756, 758 (2) (621 SE2d 846) (2005).
[17] Id.
[18] (Footnote omitted.) *Glass v. State*, 255 Ga. App. 390, 401 (10) (565 SE2d 500) (2002).
[19] (Citation omitted.) *Smith v. State*, 222 Ga. App. 366, 369 (4) (474 SE2d 272) (1996).
[20] (Citation omitted.) *Smith v. State*, 261 Ga. App. 871, 877 (5) (a) (583 SE2d 914) (2003). See *Horne v. State*, 273 Ga. App. 132, 133 (4) (614 SE2d 243) (2005) (counsel's failure to object to irrelevant questions which placed defendant's character in evidence not ineffective in child molestation case).

ineffective unless they are so patently unreasonable that no competent attorney would have chosen them."[21] Harris did not make this showing and has failed to sustain his burden of proving that his attorney rendered assistance so ineffective that it undermined the proper functioning of the adversarial process.[22]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MAY 25, 2006.

*Maria Murcier-Ashley*, for appellant.

*Patrick H. Head, District Attorney, Charles P. Boring, Amelia G. Pray, Assistant District Attorneys*, for appellee.

---

[21] (Citation and footnote omitted.) *Lewis v. State*, 275 Ga. App. 41, 44 (3) (619 SE2d 699) (2005).

[22] *Glass*, supra.